IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HEATHER M. MILLARD, | |
| Plaintiff, | 8:18CV452 |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | MEMORANDUM AND ORDER |
| Defendant. | |

Plaintiff Heather M. Millard ("Millard") seeks judicial review of the final decision of defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("Commissioner"), denying Millard's claim for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*. Before the Court are Millard's Motion for an Order Reversing the Commissioner's Decision (Filing No. 16) and the Commissioner's Motion to Affirm the Commissioner's Decision (Filing No. 20). For the reasons stated below, the Court affirms the denial of benefits.

## I.  BACKGROUND

Born in 1981, Millard protectively applied for disability benefits on April 18, 2017, alleging a disability beginning January 5, 2017. Millard reported suffering severe headaches and migraines that prevented her from working. The Social Security Administration ("SSA") denied her claim initially on August 21, 2017, and on reconsideration on October 18, 2017.

At Millard's request, an SSA administrative law judge ("ALJ") held a hearing on April 18, 2018, at which Millard and vocational expert Abbe May testified under oath. Millard was represented by counsel.

Millard testified she last worked on January 17, 2017, as a back-office lead for retailer Best Buy doing accounting, website maintenance, and human resources work. Best Buy initially accommodated her migraines by allowing Millard's subordinates to help with her work and letting her use her vacation time. After about a year, Millard went on short-term disability, hoping to return to work, but her condition got worse. She was eventually let go.

At the hearing, Millard explained she has migraines at least twenty days per month. Millard suffered migraines as a child, but they got more frequent and more extreme after a car accident on March 27, 2014. She testified that at times, they are so bad she cannot even speak or think straight. She also suffers sensitivity to light and sound that often require her to sit in a dark, quiet room.

Millard described the numerous medications she has taken and stated that every three months, she gets Botox injections that temporarily minimize the pain in her forehead and eyes. Millard also noted she regularly sees a chiropractor and uses an app on her phone to track her migraines. Millard testified she had been having a migraine since December 3, 2017. She initially rated the pain as a seven (presumably on a ten-point scale), but stated it fluctuates. Millard stated her migraines severely limit her activities and prevent her from attending her children's concerts and sporting events. When asked at the hearing if she had anything to add, Millard explained she had worked since she was twelve and that "this has been extremely hard for [her]," but that her neurologist, Manjula Tella, M.D. ("Dr. Tella"), explained that disability was there to help her.

On March 19, 2018, Dr. Tella completed a "Headache Medical Source Statement" for Millard and provided opinions regarding Millard's work limitations. Describing Millard's migraines as moderate to severe, Dr. Tella indicated Millard suffered numerous symptoms, including vertigo, nausea, photophobia, phonophobia, inability to concentrate, mental confusion, and impaired sleep and appetite. Dr. Tella opined Millard suffered

frequent headaches that lasted hours. Dr. Tella stated "abortive medications usually do not help" and reported Millard was "[c]apable of low stress work" but would need unscheduled breaks during the workday that would last "hours to days." Dr. Tella further opined Millard would be "off task" at work 25% or more of the time and would likely be absent from work "[m]ore than four days per month."

On May 21, 2018, the ALJ examined the record and determined Millard was not disabled under the Act. Millard appealed the decision to the Appeals Council, which denied her request for review on July 27, 2018, making the ALJ's decision the Commissioner's final decision in her case. *See, e.g.*, *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016). Millard seeks judicial review of that decision pursuant to 42 U.S.C. § 405(g).

## II. DISCUSSION

### A. Standard of Review

In reviewing the Commissioner's final decision under § 405(g), the Court must affirm if the "denial of benefits complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008). "'[S]ubstantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. ___, ___, 139 S. Ct. 1148, 1154 (2019).

Despite its weighty name, the threshold for substantial evidence "is not high." *See id.*, 139 S. Ct. at 1154 ("Substantial evidence . . . is 'more than a mere scintilla.'" (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938))). It "is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). "[I]f supported by substantial evidence," the Commissioner's factual findings are conclusive. 42 U.S.C. § 405(g).

In determining whether substantial evidence supports the ALJ's decision, the Court must "consider both evidence that supports and detracts from [that] decision." *Harris v. Barnhart*, 356 F.3d 926, 928 (8th Cir. 2004). The Court does "'not reweigh the evidence presented to the ALJ,' and [must] defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006) (quoting *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003)); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) ("We defer heavily to the findings and conclusions of the Social Security Administration."). "If, after review, [the Court] find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ]'s findings, [the Court] must affirm the denial of benefits." *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009) (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)).

### B. Eligibility for Disability Benefits

To qualify for disability benefits under the Act, Millard must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). The disability, not the impairment, must be continuous for at least twelve months. *See Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993). Millard is disabled under the Act only if her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

"The Commissioner uses a five-step evaluation to determine if a claimant is disabled." *Kirby*, 500 F.3d at 707; *see also* 20 C.F.R. § 404.1520(a). That sequential process requires the ALJ to consider

4

> (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals [a listed impairment]; (4) whether the claimant can return to her past relevant work; and (5) whether the claimant can adjust to other work in the national economy.

*Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)).

Steps Four and Five require the ALJ to assess the claimant's residual functioning capacity ("RFC"), *id.*, which is the most the claimant "can still do despite [her] limitations," 20 C.F.R. § 404.1545(a)(1). The ALJ "must determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [her] limitations." *Baldwin*, 349 F.3d at 556. "If it can be determined that a claimant is not disabled at a step, the ALJ does not need to continue to the next step." *Moore*, 572 F.3d at 523.

Applying the five-step process to Millard's claim, the ALJ determined Millard meets the insured status requirements and "has not engaged in substantial gainful activity since January 5, 2017," her alleged onset date. The ALJ listed "migraines, degenerative disk disease of the cervical spine, and obesity" as severe impairments for Millard but determined her impairments do not reach the level of severity required to meet or medically equal a listed impairment.

After carefully considering "the entire record," the ALJ decided Millard "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)" with some limitations, including "work in an environment with no more than moderate background noise such as found in a retail, office, educational, or medical facility indoors." He also found Millard could only occasionally stoop, kneel, crouch, and crawl and could not tolerate "sustained and concentrated extreme temperatures, vibration, fumes, dust, or hazards." The ALJ concluded "medically determinable impairments could reasonably be expected to cause [Millard's] alleged symptoms; however, [her] statements concerning the

intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."

Turning to Millard's medical evidence, the ALJ evaluated Millard's treatment history with Dr. Tella as well as with Keith Lodhia, M.D., and her chiropractor, Joelle Herman. The ALJ observed Millard's "treatment has been essentially routine and/or conservative in nature" and that "the medical records reveal that the medications have been relatively effective in controlling [her] symptoms." "[C]arefully review[ing] the record in full," the ALJ found Millard's allegations of "completely disabling" and "uncontrollable symptoms that would preclude all work are not substantiated by the medical evidence." He further found her "allegations of limitations are not . . . fully consistent with the evidence in the instant case." The ALJ also noted some discrepancies between Millard's headache log and Dr. Tella's notes and between Millard's testimony and her work records in 2015 and 2016.

In determining Millard's RFC, the ALJ noted that Millard's claim, which was filed after March 27, 2017, was governed by 20 C.F.R. § 404.1520c. Accordingly, the ALJ did "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Millard's] medical sources." *Id.* § 404.1520c(a). Under that rule, the ALJ found some of Dr. Tella's opinions persuasive but found others "wholly unsupported by other evidence in the record, including [her] treatment notes." Specifically, the ALJ found unsupported and unpersuasive Dr. Tella's estimates that Millard would (1) "need to rest for 'hours to day[s]' before returning from an unscheduled break," (2) "be off task 25 percent of the time" at work, and (3) "miss four days or more of work" per month. The ALJ emphasized that Dr. Tella's treatment notes indicated Millard's "migraine headaches had been well controlled by avoiding triggers, reducing stress, and use of prophylactic and abortive therapy." The ALJ also pointed out Millard's physical examination revealed she was not in "acute distress," had a normal level motor activity, and had normal "attention and

concentration." In evaluating Millard's "alleged physical problems," the ALJ found "minimal objective medical evidence to support [Millard's] complaints."

In contrast to those of Dr. Tella's opinions the ALJ found unpersuasive, he found "very persuasive" opinions from state agency medical physical consultants that determined Millard could perform light work with some exertional limitations. The ALJ credited those assessments "because they are acceptable medical sources, their opinions are consistent with the record as a whole, and they have knowledge of the program."

The ALJ also noted Millard was able to work before her alleged disability onset date with approximately the same level of severity of migraines. He decided the fact that her impairments did not prevent her from working then indicated they would not prevent her from working now. Noting Millard testified she was in the midst of a headache during the hearing, the ALJ observed "there was no hint in her behavior that she was in any pain" and "[s]he provided detailed and relevant responses."

Based on his analysis of the record, the ALJ concluded Millard "is capable of performing past relevant work as an administrative assistant, claims representative, marketing manager, and program assistant." Accordingly, the ALJ decided Millard is not disabled under the Act.

### C. Issues on Review
#### 1. Dr. Tella's Opinions

Millard first argues "the ALJ failed to provide good reasons for rejecting the opinions of Dr. Tella" with respect to Millard's work limitations.[1] As Millard sees it, the

---

[1] Millard originally asserted the ALJ should not have applied the new Social Security regulations to her claim and erred in failing to give Dr. Tella's opinions controlling weight. In her reply, Millard concedes the new regulations, including 20 C.F.R. § 404.1520c—which gives no special deference or specific evidentiary weight to opinions from treating physicians—apply to her case. She also withdraws her request that the Court grant an award of benefits based on the impact giving controlling weight to Dr. Tella's opinions would have had on Millard's claim.

7

ALJ assumed he could disregard Dr. Tella's "'symptoms and triggers' opinions" and failed to consider them. Millard further contends the ALJ "err[ed] by playing doctor and relying on the often-discredited sit-and-squirm test at [the] hearing to reject Dr. Tella's opinions and Ms. Millard's subjective complaints." In Millard's view, the ALJ should have focused less on his "interpretation" of the results of that "test" and more on Millard's statement that she would work if she could. Millard's arguments are unavailing.

The ALJ did not improperly disregard any of Dr. Tella's opinions or try to "play doctor" as Millard suggests. Rather, the ALJ (1) thoroughly evaluated the persuasiveness of Dr. Tella's opinions using the factors set forth in § 404.1520c(b) and (c), including, most importantly, supportability and consistency, and (2) adequately articulated valid reasons for crediting some of those opinions and discounting others. *See, e.g., Walker v. Commissioner*, 911 F.3d 550, 553 (8th Cir. 2018) ("[Good] reasons include internal inconsistency or that other physicians' opinions have better evidentiary support.").

The ALJ reasonably found some of Dr. Tella's opinions unsupported by and inconsistent with her own treatment notes and other record evidence. For example, Dr. Tella identified confusion and an inability to concentrate as symptoms associated with Millard's headaches and estimated Millard "would be off task 25 percent of the time." But the ALJ found nothing in Dr. Tella's treatment notes indicating Millard was "unfocused, confused, or disoriented." Noting Dr. Tella did not provide any factual basis for that opinion, the ALJ stated Millard did not show any "signs of any lack of concentration" at the hearing despite testifying she was in the midst of a headache.

Although an ALJ's personal observations of a claimant's demeanor at an administrative hearing are not dispositive and cannot, without more, "constitute substantial evidence supporting the [Commissioner's] decision," *Miller v. Sullivan*, 953 F.2d 417, 422 (8th Cir. 1992), it is not improper for an ALJ to consider a claimant's demeanor as a factor in evaluating a claim for benefits, *see, e.g., Johnson v. Apfel*, 240 F.3d 1145, 1147-48 (8th

Cir. 2001) (explaining it was "completely proper" for an ALJ to observe that a claimant who had difficulty with his speech "had no difficulty in communicating during the two hour hearing and did not stutter once throughout the proceeding"). The ALJ in this case did not improperly rely on his observations of Millard at the hearing or otherwise err in considering them in conjunction with Dr. Tella's opinions and treatment notes in evaluating Millard's limitations. *See id.*

The ALJ also provided sound reasons for discounting Dr. Tella's opinions regarding the "hours to days" Millard would need to recover following an unscheduled break and that she would need to miss at least four days per month. The ALJ again explained he found those opinions unpersuasive because Dr. Tella failed to provide an adequate factual basis or rationale for them. The ALJ also faulted Dr. Tella for being vague and failing to define key terms. An ALJ may discount medical opinions he reasonably finds to be vague or conclusory in nature or unsupported by or inconsistent with the physician's treatment notes and otherwise uncorroborated by objective medical evidence. *See, e.g., Anderson v. Astrue*, 696 F.3d 790, 793-94 (8th Cir. 2012); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (explaining medical opinions can be discounted "if they are inconsistent with the record as a whole or if the conclusions consist of vague, conclusory statements unsupported by medically acceptable data").

The ALJ's evaluation of Dr. Tella's opinions was neither improper nor inadequately explained.

### 2. Millard's Subjective Complaints and Third-Party Statement

In determining Millard's RFC, the ALJ reviewed Millard's "symptoms and the extent to which [her] symptoms c[ould] reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR

9

404.1529 and [Social Security Ruling 16-3p ("SSR 16-3p")]."[2] When evaluating a claimant's subjective complaints, an ALJ considers (1) "the claimant's daily activities"; (2) "the duration, frequency, and intensity of [her] pain"; (3) "precipitating and aggravating factors"; (4) "dosage, effectiveness, and side effects of medication"; and (5) any "functional restrictions." *Polaski*, 739 F.2d at 1322; *accord* 20 C.F.R. § 404.1529(c)(3).

The ALJ also must consider the claimant's work history and "[t]he absence of an objective medical basis which supports the degree of severity of subjective complaints alleged." *Polaski*, 739 F.2d at 1322. "The ALJ 'must give full consideration to all of the evidence presented relating to subjective complaints' and is not free to discredit those complaints unless they are inconsistent with the evidence contained in the record as a whole." *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995) (quoting *Polaski*, 739 F.2d at 1322).

Upon "careful consideration of the evidence," the ALJ in this case found Millard's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." In particular, the ALJ noted the lack of "objective medical evidence to support" Millard's complaints of "uncontrollable symptoms that would preclude all work" and her description of the severe limitations on

---

[2]SSR 16-3p, which applies to cases decided after March 28, 2016, describes the process by which an ALJ should "evaluate the intensity, persistence, and limiting effects of an individual's symptoms in disability claims." *See* SSR 16-3p, Titles II & XVI: Evaluation of Symptoms in Disability Claims, 82 Fed. Reg. 49462-63 (Oct. 25, 2017). To better align SSA policy with the regulatory language and "clarify that subjective symptom evaluation [under the applicable regulations] is not an examination of an individual's character," SSR 16-3p eliminated use of the term "credibility" and the requirement of a formal "credibility" finding. *Id.* at 49463. While the SSA's focus has shifted away from the claimant's "credibility," the underlying analysis is largely the same and remains consistent with *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), which "sets forth requirements for ALJs within the Eighth Circuit." *Randolph v. Barnhart*, 386 F.3d 835, 841 (8th Cir. 2004). SSR 16-3p still requires an ALJ to examine all the evidence and consider whether the claimant's alleged symptoms, including pain, are "consistent with the objective medical and other evidence" as required by 20 C.F.R. §§ 404.1529 and 416.929, which the Eighth Circuit has observed "largely mirror the *Polaski* factors." *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007).

10

her daily activities. The ALJ also noted some key inconsistencies between Millard's hearing testimony, her headache log, and the other evidence in the record, including Millard's work history and Dr. Tella's notes.

The evaluation of a claimant's subjective complaints of pain and other symptoms "is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003); *see also Johnson v. Chater*, 87 F.3d 1015, 1018 (8th Cir. 1996) ("[W]e will not substitute our opinions for that of the ALJ, who is in a better position to assess a claimant's credibility."). "If an ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so, [the Court] will normally defer to that judgment." *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001) (quoting *Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir. 1990)).

Millard acknowledges the deference ordinarily afforded to the ALJ's judgment but suggests this case may be an exception because, in her view, "[t]he ALJ did not provide good reasons for" his decision "as [he] did not evaluate the opinions provided by" Sandra Hanson ("Hanson")—one of Millard's Best Buy co-workers who described in a letter how Millard's migraines affected her ability to work. Millard also contends the ALJ misread Millard's pre-onset earnings history. According to Millard, her earnings history demonstrated a "desire to work, not a lack of disability."

Millard again fails to establish sufficient grounds to reverse the ALJ's decision. Millard's argument on this point is largely based on her unsupported assumption that the ALJ did not consider Hanson's letter. The fact that the ALJ did not discuss the letter in his analysis does not mean he did not consider it. *See, e.g.*, *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (explaining "an ALJ is not required to discuss every piece of evidence submitted" and the "failure to cite specific evidence does not indicate that such evidence was not considered"). To the contrary, the ALJ stated more than once that he considered all the evidence in the record, which includes Hanson's letter. *See Adkins v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 547, 550 (8th Cir. 2018) (rejecting a request for remand based on a

11

similar claim because the ALJ stated he had reviewed all the related evidence). Millard has not provided any basis to doubt those statements. *Cf. Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011) (concluding the fact that an "ALJ did not expressly address" a third party's statements in his decision did not require remand).

As for Millard's challenge to the ALJ's evaluation of her earnings history, Millard offers a reasonable alternative interpretation of the evidence but does not show that remand is required. The ALJ did not, as Millard contends, require her "to prove [she was] not able to work two to three years before [her] onset date[] in order to be found disabled." The ALJ's conclusions are "supported by substantial evidence in the administrative record, and [Millard]'s contentions that the ALJ should have weighed these facts differently or drawn different conclusions do not warrant relief under [the applicable] deferential standard of review." *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016).

The Court may not reverse the ALJ's decision merely because some evidence might support a different interpretation or a different outcome. *See Black*, 143 F.3d at 385. "It [is] the ALJ's task to resolve conflicts in the evidence and" evaluate a claimant's subjective complaints. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006).

### 3. The Appointments Clause

Millard next argues the ALJ's decision must be vacated because the ALJ who decided her case was an inferior officer and was not properly appointed under the Appointments Clause of the U.S. Constitution. *See* U.S. Const. art. 2, § 2, cl. 2. According to Millard, the Court should remand her case to the SSA to allow a properly appointed ALJ to hear her case. *See Lucia v. SEC*, 585 U.S. ___, ___, 138 S. Ct. 2044, 2055 (2018) ("[T]he 'appropriate' remedy for an adjudication tainted with an appointments violation is a new 'hearing before a properly appointed' official." (quoting *Ryder v. United States*, 515 U.S. 177, 183 (1995))).

For purposes of this case, the Commissioner does not deny that the ALJ is an inferior officer subject to the Appointments Clause. Instead, she contends Millard's argument fails because she never raised it before the SSA during administrative review. In support, the Commissioner notes that, although the Eighth Circuit has not yet reached the issue,[3] numerous courts in the Eighth Circuit and beyond, including this one, have decided the failure to present an Appointments Clause challenge to the ALJ or the Appeals Council forfeits (or waives) the issue. *See, e.g.*, *Hernandez v. Berryhill*, No. 8:18CV274, 2019 WL 1207012, at *6-7 (D. Neb. Mar. 14, 2019) (listing cases and following "the general rule that an Appointment[s] Clause challenge must be raised during the administrative proceeding" to warrant judicial review).

In reaching that conclusion, many of the courts in this circuit have noted (1) the Supreme Court has required "a timely challenge to the constitutional validity of the appointment of an officer who adjudicates h[er] case" to entitle a party to relief, *Lucia*, 585 U.S. at ___, 138 S. Ct. at 2055 (quoting *Ryder*, 515 U.S. at 182-83 and noting the plaintiff timely challenged the appointment before the SEC), and (2) the Eighth Circuit has decided a party can forfeit an Appointments Clause challenge by failing to raise it at the administrative level, *see NLRB v. RELCO Locomotives, Inc.*, 734 F.3d 764, 798 (8th Cir. 2013). Some also note *Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003), in which the Eighth Circuit concluded a claimant waived a proposed basis for disability because he failed to present it to the SSA. Given that precedent, those courts have found Appointments Clause challenges like Millard's—raised for the first time on judicial review—untimely. The Court finds that reasoning persuasive.

Citing *Mathews v. Eldridge*, 424 U.S. 319, 329 n.10 (1976), Millard asserts the reasoning underlying those decisions "is wrong." According to Millard, she did not have to raise her constitutional claim at the administrative level to preserve it for judicial review

---

[3]The parties report the Appointments Clause issue has been briefed in cases pending before the Eighth Circuit but has not yet been decided.

and should be allowed to raise the issue for the first time in federal court because it would have been futile to raise it before the SSA under the circumstances of her case. Millard argues *Anderson* "and its 'waiver' language was just an overstating of the futility of a plaintiff arguing limitations due to an uncomplained-of impairment for the first time in federal court."

But Millard never fully squares her arguments and proposed interpretation of *Mathews* with the decisions in *Lucia*, *RELCO*, and *Anderson*. In particular, the Court is not convinced *Anderson* can be read as narrowly as Millard proposes or that the rationale in *RELCO* is necessarily "confined to . . . a jurisdictional issue exhaustion statute that is not present in [S]ocial [S]ecurity cases" as Millard summarily contends.

Millard also does not satisfactorily explain why she could not have presented her Appointments Clause claim to the SSA to preserve the issue on appeal, even if the SSA was unwilling or unable to resolve it. In short, Millard fails to persuade the Court her case is the rare Appointments Clause challenge that either requires or warrants remand. *See Hernandez*, 2019 WL 1207012, at *7 (noting "it is a 'rare case' when a court decides to consider an untimely Appointment[s] Clause challenge" (quoting *Freytag v. Commissioner*, 501 U.S. 868, 879 (1991))).

Millard forfeited her Appointments Clause challenge by failing to present the issue to the ALJ or the Appeals Council and has not shown sufficient reason to excuse her forfeiture. As such, she is not entitled to any relief based on the Appointments Clause.

### III. CONCLUSION

After careful review of the administrative record and the parties' submissions, the Court finds the Commissioner's denial of Millard's application for disability benefits is supported by substantial evidence. Accordingly,

IT IS ORDERED:

1. Heather M. Millard's Motion for an Order Reversing the Commissioner's Decision (Filing No. 16) is denied.

2. The Commissioner's Motion to Affirm the Commissioner's Decision (Filing No. 20) is granted, and her decision denying benefits is affirmed.

3. Millard's Complaint (Filing No. 1) is dismissed with prejudice.

4. A separate judgment will issue.

Dated this 17th day of June 2019.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge